# Brandenburg v. Hurst.

Jan. 20, 1942.

Leebern Allen for appellant.

Hunter Shumate for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

This is a contest of the election of sheriff of Lee County. On the face of the returns Robert Brandenburg,

Democrat, received 1508 votes and Zach T. Hurst, Republican, received 1503. Hurst filed the contest upon the ground that a number of illegal votes had been cast for his opponent. He asked a recount of the ballots by the court. The contestee filed a counter-contest upon the same ground, and in addition charged the violation of the Corrupt Practice Act by his opponent. Upon a recount the circuit court found that Brandenburg was entitled to 1400 votes and Hurst 1426, thus giving a majority of 26 for the Republican candidate. The trial of the other issues was continued, apparently until after the disposition of this appeal.

One of the judges of the election in Beattyville Precinct No. 1 testified:

"I was Judge of the election in Beattyville, Precinct No. 1, and afflicted somewhat with rheumatism. I signed part of the ballots on the back on the line followed by the word 'Judge' but not all. I do not know how many I signed, nor how many the Clerk signed. I told him to sign them for me."

It was established that the name of the judge had been signed by the clerk on 216 ballots. The question is therefore presented whether these ballots were invalidated by the failure of a judge of the election to sign his name in person on them. Section 1460 of the Statutes provides, "before the ballot is delivered to the voter to be voted one of the judges shall sign his name on such blank line and no ballot not so signed by one of the judges shall be counted by the canvassing board whose duty it is to certify the results of the election." The trial court construed the applicable opinions of this court not to be harmonious. He was of opinion that a strict construction of the law which requires that the judge of the election shall himself write his own signature would result in greater security against fraud by substituting another ballot—which is the manifest purpose of the provision—should prevail over a liberal construction even though it results in the disfranchisement of many citizens and possibly hampers the speed and ease in which elections should be held. Therefore, the court ruled that the ballots were invalid. This reduced Brandenburg's vote by 110 and Hurst's by 82. We consider this ruling.

Our interpretation of the quoted provision of Section 1460 of the Statutes is that it is mandatory and the

full name or the initials and surname of one of the judges of the election must be signed; that the mere initials or the given name without the surname or the surname without the initials or given name is not sufficient. Johnson v. Caddell, 250 Ky. 640, 63 S. W. (2d) 810; Campbell v. Little, 251 Ky. 812, 66 S. W. (2d) 67; Wurts v. Newsome, 253 Ky. 38, 68 S. W. (2d) 448; Hogg v. Caudill, 254 Ky. 409, 71 S. W. (2d) 1020; Petry v. Hatcher, 260 Ky. 426, 86 S. W. (2d) 142. Those decisions may be said to involve the element of quantity of the signature or *what* shall be done. It is true that in some of the opinions [250 Ky. 640, 63 S. W. (2d) 813] it is written that the statute requires the "writing of his name" by the election officer. The statement is subject to the construction that he must himself write or sign his own name; but the expression as used in the first of those opinions (Johnson v. Caddell, supra) is followed by the parenthetical clause "rather than only his initials." This indicates that the mind of the writer was on the character or extent of the signature rather than upon the method to be used. In the consideration of that aspect of quality or *how* the signing shall be done, we have held that the use of a facsimile rubber stamp is sufficient. Wurts v. Newsome, supra. The same ruling has been given as to the signing of the ballot by the clerk of the election under Section 1471 of the Statutes. Hogg v. Caudill, supra. We have held specifically that since the statute does not expressly require that the judge of the election shall personally sign the ballot, under the general law he has the right to delegate to another officer of the election the signing of his name in his presence. Pardue v. Webb, 253 Ky. 838, 70 S. W. (2d) 665. The validity of this manner of signing was recognized in Petry v. Hatcher, supra, and Wright v. Crase, 273 Ky. 76, 115 S. W. (2d) 318. The opinion in the Pardue case fully considers the subject and further comment would be superfluous. Perhaps it would be a better safeguard of the ballot to require that one of the judges shall personally sign his name, but the legislature has not so expressly provided. We adhere to the interpretation of the statute heretofore given.

It is submitted there is no evidence that the judge of the election was present when his name was signed by the clerk or that each ballot was signed at his direction; hence, under the Pardue case, the court was required to hold the act not a legal signature. The judge of the elec-

tion is required by the law to be present at all times during the conduct of the election, and it is presumed that he did his duty and was present when his name was signed. His statement is enough to cover all ballots.

Therefore, we are constrained to hold the ruling of the trial court on this point was erroneous and that the 216 votes involved should have been counted.

In listing the candidates to be voted for the office of State Senator was at the top. There was no Republican candidate for that office in Lee County so that there were only blank lines, followed by the usual squares for stamping should a voter desire to write in a name and vote for that person. There was a Democratic candidate for State Senator whose name was printed at the top in the adjacent column. Nine voters stamped their ballots in the squares opposite the blank line in the list of the Republican candidates without filling in any name for senator and without voting in any other race. The question is presented whether those nine ballots should be counted for the Republican candidate for sheriff, which, of course, would be to regard the ballots as having been voted for all other candidates in the Republican list. The identical question was presented in Baker v. Dinsmore, 138 Ky. 277, 127 S. W. 997, and we held that such stamping of the ballot was no vote at all. The reasoning in Thompson v. Boling, 240 Ky. 340, 42 S. W. (2d) 321, would seem to militate against or weaken our conclusion in the Baker case, and we pointed out that the authorities on the proposition are not uniform. But that case involved the question of whether the stamping in the box opposite the blank line which is provided in each race for the writing in of a name should be counted for the candidate for that office whose name was printed last or nearest the stencil mark. We held that such candidate was entitled to the vote and distinguished the Baker case. Where one simply votes in a race where there is no candidate's name printed and he does not write in the name of anyone else, he does not vote for anyone. The trial court so ruled and we concur in that ruling.

There were 76 other ballots disputed on account of the manner in which they were marked. In most instances the trial court found that an ink mark in or near the square opposite the name of either the contestant or the contestee, which would have had the effect of nullifying the clear stencil mark for his opponent, was a blot

caused in the folding of the ballot from too much ink being used in stamping it for one or the other candidate for county judge. There were some ballots questioned upon other grounds. The special judge, Honorable John L. Vest, in a well-considered opinion, gave his reasons for counting or rejecting every one of these ballots. We have gone over every one of them for ourselves and have come to the same conclusion in respect to each of them excepting two; but the result is the same. A voter had stamped under the Democratic device, the familiar proud game cock, and then rubbed or smeared out the imprint. There is a clear stencil cross mark under the Republican device, the lowly log cabin; also in the square opposite the Democratic nominee for county clerk. Another ballot had a rubbed out imprint under the Republican device and a clear one under the Democratic emblem, but none for any separate candidate. The circuit court threw out both ballots. It is the prevailing rule that where an erasure is apparently made to correct an error and the intention of the voter is manifest the vote should be counted. It is otherwise if the attempted erasure was apparently intended as a distinguishing mark or is of such a nature as easily to identify the voter. 18 Am. Jur., Elections, Section 193. We think both ballots should have been counted; but one offsets the other.

The counting of the 216 ballots in the Beattyville precinct thrown out by the trial court and the two just referred to results in the ascertainment that the appellant Brandenburg received 1511 votes and the appellee Hurst 1509, thus giving the appellant a majority of two votes.

The judgment is reversed and the case remanded for consistent proceedings.